## ETTA BERRYMAN v. THE STATE.

No. 3945.    Decided March 20, 1907.

**Murder in First Degree—Infanticide—Insufficient Evidence.**

Where upon trial of murder by defendant of her child, there was no evidence to show that the child was born alive, that the mother, the defendant, was responsible for its death, or who cut its throat, or that its lungs were examined or any test made, the evidence is insufficient to sustain a conviction.

Appeal from the District Court of Houston. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*Moore & Sallas,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, her punishment being assessed at life imprisonment in the penitentiary for the alleged killing of her infant child.

Without going into a detailed statement of the evidence, it may be stated, that appellant was a young woman unmarried; that she was engaged to be married to Will Berryman; that at the time of the supposed birth of the child her name was Duren. After the birth of the child she married Will Berryman. It may further be stated that she gave birth to a child Friday or Friday night; that the child was found Saturday morning with its throat cut and dead. The crucial points in the case are whether there is sufficient evidence to show that the child was born alive, and, second, that the mother, appellant, was responsible for its death. There is no evidence before us that the child was born alive, nor is there any positive evidence as to who cut its throat. No instrument was found with which the cutting should have occurred, nor does the testimony indicate what sort of an instrument it was, otherwise than in a general way, it may have been a sharp instrument. One of the marvelous things, in connection with the case, is that so many witnesses were in and about the house Friday and Friday night and Saturday, and yet not one of them seem to know anything about when the child was born, and none of them seemed to have been present, and the mother (appellant) testi-

fied to her entire ignorance about the transaction on account of the acute suffering and want of intelligence produced by convulsions, bringing about coma or a comatose condition. Dr. Puntch was called to see appellant on account of these convulsions, and administered to her necessities. The witnesses differ to some extent as to what time these convulsions and comatose conditions occurred, but it seems to be thoroughly agreed that at some time she was in this condition; some of the witnesses place it about the time of the birth and continuously afterward for some days, while some of them show that she was in her normal mental condition on the morning after the child should have been born the previous night or day. Dr. Puntch examined the child in rather a careless and indifferent way from his testimony, and made no test as to whether the child was born dead or alive; he said in a general way he thought the child had been born alive, but made no test to ascertain, and his conclusion was arrived at by simply looking at the form of the dead child as it lay partially uncovered in the arms of a negro woman. The doctor gave a test by which it could have been ascertained, but no test was made, and the testimony clearly indicates that he only glanced at the child for a moment or two and never saw it afterwards. The lungs of the child were not examined and no test made from that standpoint. Another physician testified practically, or in substance, at least, that from such cursory examination of an infant just born no safe conclusion could be reached as to whether it was born alive or dead. So, perhaps, the strongest fact we have in the record before us as to its being born alive is that the child's throat was cut. We do not believe that this is sufficient evidence to show that the child was born alive and subsequently murdered. There have been quite a number of cases in this State where this question has been fully and ably discussed, but in no case that we can recall has evidence of this character been held sufficient to show that a child had been born alive and subsequently murdered. As the evidence is presented, we are of opinion that it is not sufficient, and the judgment is, therefore, reversed and the cause remanded.

*Reversed and remanded.*